| | | |
|---|---|---|
| BRIAN W. CATT, by and through MICHAEL | ) | |
| AND CINDY SKEANS, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:08-CV-243-JVB-PRC |
| | ) | |
| AFFIRMATIVE INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

## OPINION AND PROTECTIVE ORDER

This matter is before the Court on Defendant's Motion for Protective Order Relating to Rule 30(b)(6) Depositions [DE 24], filed by Defendant Affirmative Insurance Company ("Affirmative") on March 25, 2009. Plaintiffs Michael and Cindy Skeans ("the Skeans") filed a response on April 9, 2009, and Affirmative filed a reply on April 16, 2009. For the following reasons, the Court grants in part, denies in part, and denies in part as moot Affirmative's Motion for Protective Order.

## PROCEDURAL HISTORY

This case involves a claim of "bad faith" on the part of Affirmative, arising out of an underlying state court automobile accident litigation in which the Skeans received a judgment against Brian Catt, an Affirmative insured, which exceeds Catt's liability insurance coverage by more than $2 million. After the judgment was entered, Catt assigned his negligence, breach of contract, and bad faith causes of action against Affirmative to the Skeans in exchange for an agreement not to execute on the balance of the state court judgment against Catt's personal assets. The Skeans' Complaint in this action, filed on August 14, 2008, alleges that Affirmative acted in bad faith by failing to settle the claim with them for the liability limits of Catt's insurance policy prior to litigation.

The Skeans have already taken the depositions of four former and current employees of Affirmative, specifically: (1) Jean Donchez, who adjusted bodily injury claims at Affirmative in 2003 and was involved in the early investigation of the Skeans' claim; (2) Quintin Simutis, who is currently the director of Affirmative's casualty claims unit for four states, including Indiana, and a former casualty adjustor who was responsible for much of the claim activity and communications with opposing counsel; (3) Roy Goldman, who was Affirmative's claims manager in 2003, responsible for supervising Simutis and Donchez, and who left Affirmative in 2007 as director of claims; and (4) Timothy Meade, Affirmative's director of the litigation unit, who approved the settlement authority extended in an attempt to settle the Skeans' claim in 2003.

Affirmative represents that, in the course of discovery, it has produced essentially all of its Claim File for the period from the inception of the claim until the Skeans commenced their state court civil suit against Catt in August 2003, consisting of over 250 pages of documents. It also has produced a printout of its Electronic Claims Journal entries, comprising another 130 pages chronicling Affirmative's claim handling over that same period of time.

At the request of Affirmative's counsel, counsel for the Skeans furnished Affirmative with a draft Rule 30(b)(6) deposition notice on January 26, 2009. The draft did not include a document request. Following service of the draft, the parties engaged in discussions regarding the appropriateness of the notice and Affirmative's objections thereto. The Skeans did not alter or amend their deposition topics, and on March 3, 2009, the Skeans served a notice of Rule 30(b)(6) deposition on Affirmative with an accompanying subpoena duces tecum. Affirmative has attached a satisfactory Local Rule 37.1 notice reciting the parties' attempts to resolve informally this discovery dispute as required by Federal Rule of Civil Procedure 26(c)(1).

# ANALYSIS

Affirmative seeks the entry of a protective order pursuant to Federal Rule of Civil Procedure 26(b)(2)(C) as to each of the twenty-three Rule 30(b)(6) deposition topics noticed by the Skeans. Based on Affirmative's prior production of its Claim File, Electronic Claims Journal, and four current or former Affirmative employees for deposition, Affirmative believes the topics requested in the Rule 30(b)(6) deposition notice are too vague to be comprehensible, cumulative and duplicative of discovery already taken, irrelevant to the Skeans' "bad faith" claims, better answered through other means of discovery, or privileged. With the exception of their withdrawal of one deposition topic, the Skeans deny each objection. More specifically, the Skeans argue that the four deponents provided limited or no answers to certain questions pertaining to the general business, claims policies and procedures, and operations of Affirmative, which are the subject of the Rule 30(b)(6) deposition notice. Therefore, the Skeans seek to depose a higher ranking individual or individuals who can provide answers pertaining to Affirmative's claims policies, training programs, and overall operations.

Rule 30(b)(6), which addresses depositions directed to an organization, provides that the deposition notice must "describe with reasonable particularity the matters for examination," after which the organization "must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Fed. R. Civ. P. 30(b)(6). The organization then is responsible for preparing the designated individual for the deposition as that person "must testify about information known or reasonably available to the organization." *Id*. Rule 30(b)(6) depositions are limited by the scope of discovery in Rule 26(b), which allows discovery on any

"nonprivileged matter that is relevant to any party's claim or defense . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  In order to expand discovery to include "any matter relevant to the subject matter involved in the action," a showing of "good cause" must be made by the party seeking the discovery.  *Id.*

Under Rule 26(b)(1), all discovery, including Rule 30(b)(6) depositions, is subject to the limitations on discovery imposed by Rule 26(b)(2)(C), which provides, in relevant part:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

Rule 30(b)(6) deposition notices may also be subject to a protective order at the request of the party from whom discovery is sought if the Court determines that the standard set forth in Rule 26(c)(1) is met:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
> (B) specifying terms, including time and place, for the disclosure or discovery;
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

 . . . .

Fed. R. Civ. P. 26(c)(1). The burden is on the party seeking the protective order to demonstrate that good cause exists for the entry of the order by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981); *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

In support of the scope of discovery they seek in the Rule 30(b)(6) deposition, the Skeans rely on the negligence standard articulated in *Hartford Casualty Insurance Co. v. New Hampshire Insurance Co.*, 628 N.E.23d 14 (Mass. 1994), for their claim that Affirmative acted in bad faith by failing to settle their claim against Catt within the policy limits. Therefore, they argue that deposition topics relating to Affirmative's business operations, business policies, training, and claims handling procedures that may or may not have been in place when the claim was made against Catt are not outside the scope of relevant evidence. In its reply brief, Affirmative argues that the Massachusetts law in *Hartford* is inapposite to this case in which Indiana substantive law applies and that the standard for "bad faith" claims under Massachusetts law is materially different than that of Indiana law, which Affirmative argues is narrower and does not encompass a negligence standard.

Because the Court has subject matter jurisdiction based on diversity under 28 U.S.C. § 1332(a) and because this case was removed from Indiana state court, the Court applies the law of the State of Indiana, the state in which it sits. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *First Nat. Bank and Trust Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 689 (7th Cir. 2004). However,

because the parties have argued that the laws of different states are applicable, the Court looks to the "whole law of the forum in which it sits, including that state's choice-of-law rules." *Soo Line R.R. Co v. Overton*, 992 F.2d 640, 643 (7th Cir. 1993) (citing *Coldwell Banker & Co. v. Karlock,* 686 F.2d 596, 600 (7th Cir. 1982)); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that a federal court sitting in diversity jurisdiction must apply the conflict-of-law rules of the forum state). Indiana courts apply Indiana's choice-of-law rules for torts to actions for failure to act in good faith in settling an insurance claim with a third party. *See Calderon v. Melhiser*, 458 F. Supp. 2d 950, 952 (S.D. Ind. 2006) (citing *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind. 1993)). The first step in a choice-of-law analysis for torts under Indiana law is to determine whether there is a true conflict between the laws of the two states. *Id*. (citing *Alli v. Eli Lilly and Co.*, 854 N.E.2d 372 (Ind. Ct. App. 2006); *Simon v. U.S.*, 805 N.E.2d 798, 805 (Ind. 2004)). It is only if there is an actual conflict between the laws of the two states that a court then applies the traditional rule of *lex loci delicti* to choose the substantive law of the "state where the last event necessary to make an actor liable for the alleged wrong takes place." *Id*.

In this case, there are no facts currently before the Court to suggest any relationship between this case and the law of the State of Massachusetts, and, thus there is no choice of law to resolve between Indiana and Massachusetts. As to whether the law of any state other than Indiana may be applicable to the facts of this case, both Affirmative and the Skeans have applied the substantive law of Indiana in their separate briefings on Affirmative's pending motion for summary judgment. Notably, in their response in opposition to summary judgment, the Skeans applied Indiana, not Massachusetts, law to their "bad faith" claim; that response brief was filed six days after the Skeans'

response to the instant motion for protective order but a day prior to Affirmative's reply in support of this motion.

Notwithstanding the parties' apparent agreement as to the applicability of Indiana substantive law, the parties disagree as to what the legal standard for the Skeans' "bad faith" claim is under Indiana law. In their reply brief on the instant motion and in their brief in support of summary judgment, Affirmative argues that the standard in Indiana for a claim of "bad faith" for failure to settle with a third party cannot be based on negligence but rather that the insured must prove that the insurer acted with a "dishonest purpose, moral obliquity, furtive design, or ill will," citing *Humphrey v. Founders Insurance Co.*, No. 2:05-CV-36, 2006 WL 978881, *5 (N.D. Ind. Apr. 7, 2006). In contrast, the Skeans argue in their response in opposition to summary judgment that the "fiduciary duty standard" or "negligence and/or bad faith" standard applicable to such claims is set out in cases like *Certain Underwriters of Lloyds' v. General Accident Ins. Co.*, 990 F.2d 228, 231 (7th Cir. 1990), *Allstate Insurance Co. v. Axsom*, 696 N.E.2d 482 (Ind. Ct. App. 1998), and *Economy Fire & Casualty Co. v. Collins*, 643 N.E.2d 382 (Ind. Ct. App. 1994).

Regardless of the standard under Indiana law ultimately applied by District Court Judge Van Bokkelen in his forthcoming ruling on summary judgment, this Court finds that under either proposed legal standard for the "bad faith" claim and based on the definition of "relevant" discovery in Rule 26(b), the evidence sought by the Skeans regarding broader questions of company policies, training, and claims handling is relevant to the claims and/or defenses in this action. For example, under the broader negligence standard asserted by the Skeans, evidence of Affirmative's practices or lack thereof in comparison with industry practices is relevant to whether Affirmative breached its fiduciary duty; under the narrower standard of "dishonest purpose, moral obliquity, furtive

design, or ill will" proposed by Affirmative, whether or not Affirmative had certain policies or training programs may inform the state of mind, knowledge, and regular practices of the individual claims adjustors and managers who dealt with this case in relation to the handling of the Skeans' claim.

With these standards in mind, the Court turns to each of the disputed 30(b)(6) deposition topics.

**1.  The documents requested in the Subpoena Duces Tecum**.

In conjunction with the Rule 30(b)(6) deposition notice, the Skeans served Affirmative with a subpoena duces tecum covering thirteen separate document requests.  At issue in this first objection is not only the production of the documents requested in the subpoena duces tecum but also the testimony sought in Topic 1 regarding those documents.

Through the course of briefing this motion, the parties have agreed that all documents listed in the subpoena duces tecum have already been produced by Affirmative in the course of discovery with the exception of Request 1, which seeks the "complete personnel files of all company employees who worked on the claim that is the subject of this litigation."  Objecting to this document request, Affirmative argues that, because it concedes that its employees were acting within the scope of their authority, any act comprising "bad faith" by an employee is attributed to Affirmative for liability purposes.  Affirmative also argues that this request is not relevant under Rule 26(b)(1) because, regardless of the employment history of the claims personnel, the only relevant issue for this case is those employees' handling of the underlying claim and that those facts are exhaustively documented in the Claim File and the Electronic Claim Journal already produced.

In response, the Skeans contend that the files are relevant because they go to the adjustor's training, education, and performance with regard to claims handling.

The Court finds that the information in the personnel files related to the employees' training, education, and performance with regard to claims handling is relevant to the claims and defenses in this case but that all other information in the personnel files is not relevant. Therefore, the Court **GRANTS in part** and **DENIES in part** Affirmative's Motion for Protective Order as to Request #1 in the subpoena duces tecum and **ORDERS** Affirmative to comply with the subpoena duces tecum by producing a copy of any portions of the personnel files of the individuals who worked on the claim that is the subject of this litigation that go to those individuals' training, education, or performance with regard to claims handling **<u>only</u>**. The Court **DENIES as moot** the remainder of Affirmative's Motion related to the subpoena duces tecum.

Regarding deposition Topic 1, Affirmative objects to the topic as too vague under Rule 30(b)(6) because seeking general testimony about the documents produced does not satisfy the "reasonable particularity" requirement of the Rule. The Skeans simply respond that it is not unreasonable to ask an officer or director to testify regarding documents produced by Affirmative, especially the Claim File. The Court finds that this topic is too broad and not described with reasonable particularity and, thus, is unduly burdensome. *See CSX Transp., Inc. v. Vela*, 2:06-CV-112, 2007 WL 3334966, at *4 (S.D. Ind. Nov. 8, 2007) (citing *In re: Indep. Serv. Orgs. Anti-Trust Litigation*, 168 F.R.D. 651 (D. Kan. 1996)) (granting protective order as to Rule 30(b)(6) request for plaintiff to produce all of its factual proof and to prepare a witness to be able to testify on a particular defense); *see also 1100 West, LLC v. Red Spot Paint and Varnish Co., Inc.*, 1:05-CV-1670, 2007 WL 2904073, at *3 (S.D. Ind. May 18, 2007) (addressing a deposition topic

encompassing all of the documents produced by the defendant as too broad). The Court **GRANTS** the Motion for Protective Order as to Topic 1.

**2. The facts contained in the documents to be produced**.

As with Topic 1, Affirmative objects to Topic 2 on the basis that it is impossibly broad and that Affirmative should not be required to identify and prepare a company representative to essentially testify about every act, piece of correspondence, telephone conversation, and electronic journal entry of the underlying claim. The Skeans' response is identical to that of Topic 1.

For the same reasons and on the same legal basis as Topic 1, the Court finds that Topic 2 is overly broad and does not state the topic with "reasonable particularity." The Court **GRANTS** the Motion for Protective Order as to Topic 2.

**3. The allegations of the Plaintiff's complaint**.

**and**

**4. The allegations and answers of the defendant's answer and affirmative defenses pled by the defendant to the plaintiff's complaint.**

The parties deal with Topics 3 & 4 jointly. Affirmative argues that the entire history of Affirmative's handling of the underlying claim from its inception through the expiration of the Skeans' counsel's twenty-one day demand time limit on settlement was already exhaustively covered in the four previous depositions, citing the specific pages of the depositions addressing the handling of the claim. Affirmative also notes that it has already produced documents demonstrating everything that occurred between the time Affirmative received the Skeans' time-limited demand and the expiration of that demand on March 7, 2009, and Affirmative cites the relevant pages of the Claim File and the Electronic Claim Journal. Similarly, Affirmative argues that Topic 4 is duplicative because its Answer amounted to a general denial coupled with the defense that the

statute of limitations bars the Skeans' claim and that the substance and rationale of Affirmative's general denial was comprehensively treated in the same deposition testimony addressing the handling of the Skeans' claim from its inception through March 12, 2003, when the settlement demand was withdrawn by Skeans' counsel. Affirmative argues that the documents produced as part of its Rule 26 initial disclosures also further support the Answer. Thus, Affirmative argues that Topics 3 & 4 are duplicative and unreasonably cumulative and that the Skeans have already had ample opportunity to obtain this information through other means of discovery.

The Skeans respond that the other deponents' testimony regarding their personal involvement in the claim provided little or no information regarding the company's decision making process and procedure for these types of claims. The Skeans reason that the prior four individuals were "foot soldiers" and were unaware or had little knowledge of many aspects of the Complaint, and, therefore, this topic has not been exhausted. The Skeans seek to explore these topics with the "decision makers." Affirmative disputes that the previous deponents were merely "foot soldiers" as Goldman was the claims manager with overall supervision of the "foot soldiers" charged with adjusting the claim, and Meade was Affirmative's Litigation Manager, who had policy limits authority and who ultimately authorized payment of policy limits on the Skeans' claim.

Affirmative replies that nothing in the wording of deposition Topics 3 & 4 suggests that decision making authority is implicated. Although true, the deposition testimony given in one's individual capacity may differ qualitatively from that given in the capacity as a Rule 30(b)(6) deponent in which the individual speaks on behalf of the corporation, and the Skeans should be allowed to seek certain information from the perspective of Affirmative as a business entity. *See Alloc, Inc. v. Unilin Decor N.V.*, Nos. 02-C-1266, 03-C-342, 04-C-121, 2006 WL 2527656, at *2

(E.D. Wis. Aug. 29, 2006). However, the Skeans have not identified those portions of the Complaint, Answer, and Affirmative Defenses on which they seek Rule 30(b)(6) testimony that might be qualitatively different than the deposition testimony already given by the deponents. Therefore, it appears that some of this testimony sought would be duplicative.

More importantly, Topics 3 and 4 are too broad and do not identify the subject matter to be covered with "reasonable particularity." *See, e.g.*, *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058, n.5 (7th Cir. 2000). On these two bases, the Court **GRANTS** the Motion for Protective Order as to Topics 3 and 4. However, in relation to other deposition topics that the Skeans have articulated with reasonable particularity, the Court permits the Skeans to explore those topics with someone who can speak on behalf of the company, as set forth in the remainder of this Order.

**5. The answers made by defendant to the plaintiffs' interrogatories and the responses made by defendant to plaintiffs' request for production.**

Affirmative argues that Topic 5 does not satisfy the "reasonable particularity" requirement of Rule 30(b)(6), citing *EEOC v. Burlington N. & Santa Fe Ry.*, No. CIV-07-734-D, 2008 WL 4845308, at *2 (W.D. Okla. June 23, 2008) (finding that a topic designation of "information in EEOC's Rule 26 initial disclosures" is not described with "reasonable particularity" as required by Rule 30(b)(6)). The Skeans describe Affirmative's argument as "ridiculous" because Affirmative has identified John Killacky as the officer responsible for answering the Skeans' written discovery and because Mr. Killacky has attended all depositions to date. The Skeans assert that Mr. Killacky should be produced for the Rule 30(b)(6) deposition if he is the one best able to answer these questions.

The purpose of the reasonable particularity requirement is to allow the business to identify a witness or witnesses who possesses knowledge responsive to the subjects identified in the Rule

30(b)(6) notice.  *See Hooker v. Norfolk S. Ry. Co.*, 204 F.R.D. 124, 126 (S.D. Ind. 2001).  The Court finds that Topic 5 does not satisfy the "reasonable particularity" requirement of Rule 30(b)(6) because the Skeans do not identify the specific topics contained within Affirmative's discovery responses about which they hope to solicit testimony under Rule 30(b)(6), and, thus, Affirmative is not able to identify which individual or individuals are best able to address those substantive topics.  Therefore, the Court **GRANTS** the Motion for Protective Order as to Topic 5.

**6.   The person who can name all persons who participated in decisions regarding the handling of the claim that is the subject of this litigation.**

Affirmative argues that it has already identified in its Rule 26 Initial Disclosures as well as in the Claim File and the Electronic Claim Journal produced with the Initial Disclosures all of the individuals who participated in any decisions regarding the handling of the Skeans v. Catt claim from the period of time from the inception of the claim until the Skeans' counsel withdrew the settlement demand and declared the Skeans' intent to initiate litigation.  Affirmative assumes this time period based on the claims in the Complaint and on the Skeans' failure to identify a time period in the topic.  The Skeans response simply references their responses to Topics 3-5.  The Skeans do not dispute the time limits imposed by Affirmative, nor do they contend that Affirmative has not already provided this information.  Accordingly, because Affirmative has already provided the information requested in this topic during the course of discovery, the Court **GRANTS** the Motion for Protective Order as to Topic 6.

**7.   The person who can best identify and explain the discretionary authority levels of Affirmative's employees, agents and principals.**

Affirmative first objects that this topic contains no time limits.  Assuming that it refers to the time during which the Skeans v. Catt claim was being adjusted after the time-limited settlement

demand and prior to the withdrawal of the settlement demand on March 12, 2003, Affirmative represents that the levels of settlement authority in the Affirmative claims handling process was a subject covered in several of the depositions already taken and, thus, is duplicative. *See* Aff. Br., p. 12 (citing pages of the depositions of Goldman and Meade). The Skeans respond that "many" of the people deposed did not have discretionary authority or know of the discretionary authority of others at Affirmative and that they should be allowed to depose the person who oversaw Affirmative's handling of this claim. The Skeans reason that, although Goldman testified as to the monetary authority several people had at the time, they should be permitted to inquire as to why the company was set up that way, who made the decision to give a particular individual a specific amount of monetary authority, why that specific amount was decided upon, and who had the discretionary authority to make certain decisions other than monetary decisions. Affirmative's reply contains an excerpt from Goldman's deposition and the reassertion that the sought testimony is duplicative.

Goldman's answers on this topic of settlement authority only go to the extent of his personal knowledge at the time. This topic is not duplicative because the Skeans should be permitted to explore this deposition topic with an individual testifying on behalf of the company, as Rule 30(b)(6) requires the designated individual to testify about "information known or reasonably available to the *organization*" and not based solely on the individual's personal knowledge. Fed. R. Civ. P. 30(b)(6) (emphasis added); *see also Kucenko v. Marion County Sheriff*, No. 1:04-CV-1591, 2007 WL 1650939, at *4 (S.D. Ind. June 1, 2007) (recognizing that the Rule 30(b)(6) deponent expresses the views of the business entity and that the Rule requires the party to prepare the witness to give answers on its behalf); *Robbins v. NCO Fin. Sys., Inc.*, No. 2:06cv116, 2006 WL 3833352, at *4

(N.D. Ind. Dec. 12, 2006) (same).  Therefore, the Skeans should be permitted to explore this topic with someone of sufficient authority to speak on behalf of the company, and the Court **DENIES** the Motion for Protective Order as to Topic 7.

**8.   The person who can best identify and explain all information and which defenses, affirmative or otherwise, may be asserted.**

Affirmative asserts that Topic 8 is duplicative of Topic 4 and is thus subject to a protective order for the same reasons.  Affirmative further argues that, to the extent this topic seeks the legal theories, mental impressions, or opinions of Affirmative's counsel in defending this action, such information is absolutely protected as work product material pursuant to Rule 26(b)(4)(B).  The Skeans simply reassert their responses in support of Topics 3-5 and do not address the work product doctrine.  For the reasons set forth above under Topic 4, the Court **GRANTS** the Motion for Protective Order as to Topic 8.

**9.   The person who can best identify and explain and produce all standards, written or otherwise, of defendant's claims handling.**

**and**

**10.   The person who can best identify and explain how the standards for claims handling, written or otherwise, have been adopted and implemented by Affirmative Insurance for handling and investigating all claims such as the one that is the subject of this litigation.**

The parties address Topics 9 and 10 together.  Affirmative objects to these topics on the basis that they are not limited in time and they are duplicative of discussions in the depositions previously taken of Affirmative personnel.  Affirmative identifies pages from the deposition transcripts and reasons that the four individuals represented the complete range of levels of the claim adjustment process at Affirmative, from line adjustors through claims manager and director, up to litigation director.  In their response, the Skeans limit their request to information from the time period

"relevant to this action," assert that this request is not overly broad (although Affirmative did not make this argument), and refer to their responses to Topics 3-5 and 7.

The Court finds that, as with Topic 7, this is an area of questioning that the Skeans should be permitted to explore with a representative of the corporation. *See* Fed. R. Civ. P. 30(b)(6); *see also Kucenko*, 2007 WL 1650939 at *4; *Robbins*, 2006 WL 3833352 at *4. To the extent that Affirmative argues relevancy in its reply brief based on the Skeans' assertion of a negligence standard under *Hartford Casualty* and Affirmative's assertion of a standard based on "dishonest purpose, moral obliquity, furtive design, or ill will," the Court finds that this deposition topic is relevant under the legal standard asserted by either party for a "bad faith" failure to settle claim with a third party on behalf of the insured, as set forth above in the introduction to this Analysis section. Accordingly, the Court **DENIES** the Motion for Protective Order as to Topics 9 and 10.

**11. The person who can best identify and explain claims procedures and practices regarding claims such as the one that is the subject of this litigation.**

Affirmative objects to Topic 11 on the basis that it does not designate the subject of the examination with the "reasonable particularity" required by Rule 30(b)(6) because the term "claims procedures and practices" is indefinite. Affirmative also objects that this topic is not limited in time and that it is cumulative and duplicative because the Skeans have already taken the depositions of two line level claims personnel who were directly involved in the handling of the underlying claim as well as the claim manager who supervised them. In response, the Skeans reassert their responses in support of Topics 3-5 and 7 and argue that the four individuals deposed denied having knowledge of set claim procedures or practices regarding claims such as the one that is the subject of this litigation. The Skeans reason that they must be allowed to discover Affirmative's policies and procedures in order to determine if Affirmative acted in bad faith under a negligence standard.

16

First, the Court finds that this topic is stated with "reasonable particularity" because the term "claims procedures and practices" is modified by the words immediately following: "regarding claims such as the one that is the subject of this litigation." The Court finds that this topic shall be limited to the time frame relevant to the events in this action. In addition, this topic is not duplicative because the Skeans should be permitted to explore this deposition topic with an individual testifying on behalf of the company, as Rule 30(b)(6) requires the designated individual to testify about "information known or reasonably available to the *organization*" and not based solely on the individual's personal knowledge. Fed. R. Civ. P. 30(b)(6) (emphasis added); *see also Kucenko*, 2007 WL 1650939 at *4; *Robbins*, 2006 WL 3833352 at *4. Finally, for the reasons set forth previously, the Court finds that this topic is relevant under the "bad faith" standard asserted by either party. Therefore, the Court **DENIES** the Motion for Protective Order as to Topic 11.

## 12. The person who can best identify and explain the reporting procedures of Affirmative Insurance and its employees.

Affirmative objects to Topic 12 on the basis that the term "reporting procedures" does not satisfy the "reasonable particularity" requirement of Rule 30(b)(6). Affirmative also objects on the basis that there is no identified time frame. In their response, the Skeans clarify that they are "seeking an individual who can testify regarding what procedures the defendant has for channeling the flow of information up the 'chain of command.'" In reply, Affirmative argues that the manner in which communications regarding this claim were made was already the subject of the four individual depositions.

As with Topics 7 and 9-11, the Court finds that the Skeans should be permitted to depose a company representative on these specific company procedures rather then being limited to the previous deposition testimony related to the communications that occurred during the claim in this

case. Accordingly, the Court **DENIES** the Motion for Protective Order as to Topic 12, but limits the topic to the Skeans' clarification in their response brief and to the time period relevant to the claim in this case.

**13. The person who can best identify and explain Affirmative Insurance's procedures for obtaining certified copies of policies.**

This deposition topic has been withdrawn by the Skeans. Accordingly, the Court **DENIES as moot** the Motion for Protective Order as to Topic 13.

**14. The person who can best identify and explain Affirmative Insurance's policies and procedures for communicating with its insureds.**

Affirmative objects to this topic on the basis that it has no time limit and because the manner in which Affirmative attempted to contact its insured in this specific case was the subject of substantial documentation in the Claim File, corresponding entries in the Electronic Claims Journal, and the deposition testimony of the Affirmative personnel. The Skeans reassert their responses in support of topics 3-5, 7, and 11. The Skeans also reason that the testimony of the four deponents that they were unaware of any such procedures does not establish that such procedures did not exist. The Skeans seek to discover whether the attempts of the individual claims representatives to communicate with their insured, Catt, were consistent with company policies, whether written or oral. The Court agrees and **DENIES** the Motion for Protective Order as to Topic 14.

**15. The person who can best identify and explain Affirmative Insurance's procedures for the handling of time demand letters, such as the one that is the subject of this litigation.**

The failure of the Skeans to identify the time period for this topic is Affirmative's first objection. Assuming that the time period is limited to the period that the Skeans' time demand was in effect, Affirmative argues that this topic is duplicative because Meade and Goldman both explained the procedures. The Skeans reference their responses in support of topics 3-5, 7, 11, and

14.  As with Topic 14, the Court finds that the Skeans should be permitted to explore this topic with a company representative, and the Court further finds that the topic is relevant under the various proposed substantive legal standards for the "bad faith" claim.  Accordingly, the Court **DENIES** the Motion for Protective Order as to Topic 15, with the limitation that the relevant time period is that during which the Skeans' time demand was in effect (from February 14, 2003, to March 7, 2003).

**16.  The person who can best identify and explain Affirmative Insurance's procedures requiring releases and types of releases in claims such as the one that is the subject of this litigation.**

Affirmative objects to Topic 16 on the basis of relevance because, while a general release was tendered to the Skeans' counsel in the underlying claim, the Skeans have not alleged that the tendering or requiring of a release was "bad faith" on the part of Affirmative.  Affirmative also argues that the process by which releases are tendered and Affirmative's policy of requiring a release before issuance of a settlement check were explained in the depositions of Simutis, Meade, and Goldman.  The Skeans do not address Affirmative's relevancy argument.  Rather, they reassert their responses in support of Topics 3-5, 7, 11, and 14.  They also argue that, even if the deponents testified that there was no written policy on the subject of releases, they have a right to discover whether there was a written policy that these deponents were unaware of or whether there was an oral policy.

The Court finds that this topic is relevant because, although there is no allegation that the tender and requirement of a release by Affirmative was "bad faith" on the part of Affirmative, the release was one of the steps leading to Affirmative's decision not to settle this case within the policy limits.  In addition, as with previous topics, the Skeans should be permitted to pose this deposition

topic to a company representative prepared to testify on behalf of Affirmative. The Court **DENIES** the Motion for Protective Order as to Topic 16.

**17.  The person who can best identify and explain Affirmative Insurance's procedures for determining legal liability in claims such as the one that is the subject of this litigation.**

Affirmative objects to this topic as duplicative, arguing that this subject was discussed in the depositions of Affirmative personnel and is documented in the Electronic Claim Journal. After referencing their responses to prior topics, the Skeans also argue that the elicited deposition testimony on this topic was "extremely evasive on the liability evaluation process" because the deponents were all unaware of any policies or procedures regarding the evaluation of legal liability. Pl. Resp., p. 14.  In reply, Affirmative argues that the topic is duplicative but also suggests that, if the Skeans have a reason to challenge the deponents' testimony that such procedures did not exist, a single, well-phrased interrogatory would be the most efficient means of obtaining this information.

The Court finds that this topic is relevant but agrees with Affirmative that, given the nature of the deponents' testimony regarding the nonexistence of such policies or procedures, this topic is best addressed in the form of an interrogatory. Accordingly, the Court **GRANTS** the Motion for Protective Order as to Topic 17 but **GRANTS** the Skeans leave to address this topic by interrogatory.

**18.  The person who can best identify and explain Affirmative Insurance's procedures for field handling.**

Affirmative objects that the term "field handling" is not described with "reasonable particularity" under Rule 30(b)(6) and that there is no time frame for this topic. In response, the Skeans note that they have already defined "field handling" in earlier correspondence, and they define it as "Affirmative's procedures and policies for sending investigators into the field to either

investigate crash sites, visit witnesses, or go to hospitals to gather information." In reply, Affirmative argues that the Skeans had ample opportunity in which to explore this topic and that all four deponents covered this topic in their depositions. However, as with many other topics, the Skeans are entitled to learn the company's policies rather than simply the steps taken in relation to the specific claim in this case. Accordingly, the Court **DENIES** the Motion for Protective Order as to Topic 18.

**19. The person who can best identify and explain Affirmative Insurance's procedures for supervision of litigation.**

Affirmative objects that the manner in which it supervises litigation is not relevant to any party's claim or defense because the allegations of the Skeans' Complaint demonstrate that all of the conduct allegedly constituting "bad faith" on the part of Affirmative took place by, at the latest, March 12, 2003, when the Skeans withdrew their settlement demand and decided to pursue litigation. The lawsuit was not filed against Catt until August 2003, several months after the alleged "bad faith" acts. The Court finds that this topic is not relevant and **GRANTS** the Motion for Protective Order as to Topic 19.

**20. The person who can best identify and explain Affirmative Insurance's procedures for training of adjusters and managers who investigate injury and property claims such as the one that is the subject of this litigation.**

Affirmative's objections to Topic 20 are that there is no temporal limit, it is duplicative of prior testimony of Affirmative personnel, the Skeans have had ample opportunity to conduct discovery on this issue, and training is not relevant under the legal standard for the "bad faith" claim asserted by Affirmative. In addition to reiterating certain prior responses, the Skeans argue that this topic could lead to the discovery of evidence that shows bad faith. As an example, the Skeans suggest that evidence that Affirmative intentionally kept its adjustors "in the dark" to create a pattern

or atmosphere that would delay the claims evaluation and settlement process would be relevant and admissible. As with other contested topics and for the reasons previously explained, the Court finds that this topic is relevant under the legal standard for "bad faith" asserted by either party. The Court **DENIES** the Motion for Protective Order as to Topic 20 but imposes the temporal limit of the time frame relevant to the claim underlying this cause of action.

**21.  The person who can best identify and explain Affirmative Insurance's procedures for licensing adjusters and managers in both the states of Illinois and Indiana.**

Affirmative represents that neither Illinois nor Indiana requires licensing of claims personnel. To the extent the Skeans seek an admission by Affirmative that none of its claims personnel are licensed by the States of Illinois or Indiana, this topic would more efficiently be addressed with a carefully worded Request to Admit. The Court **GRANTS** the Motion for Protective Order as to Topic 21 but **GRANTS** the Skeans leave to serve a Request to Admit on this topic.

**22.  The person who can best identify and explain Affirmative Insurance's handling of subrogation claims.**

Affirmative argues that this topic is not relevant under Rule 26(b)(1) because the underlying insurance claim did not include any subrogation claim asserted by Affirmative, even if a subrogation claim would in some way be relevant to the current "bad faith" claim. The Skeans respond that subrogation is relevant because there was another property damage claim pending and State Farm had a subrogation right against Affirmative and Brian Catt for the property damage. The Skeans reason that the way in which Affirmative evaluated and balanced the two claims against Catt is at the heart of this matter. In reply, Affirmative reasserts that Affirmative's handling of subrogation claims is not relevant. As to Affirmative's payment of $949.43 for a property damage claim to the insurer of the driver of the third vehicle involved in the January 8, 2003 collision, Affirmative

explains that this amount was deducted from the property damage limit of $10,000 on Catt's policy and that the amount remaining on the property damage limit, $9050.57, was tendered to the Skeans on March 26, 2003.  The Court finds that, given the facts in this case, this topic is not relevant, and the Court **GRANTS** the Motion for Protective Order as to Topic 22.

**23.  The person who can best identify and explain Affirmative Insurance's procedures for training and educating its employees regarding bad faith.**

Affirmative references its objections to Topic 20 and objects that this topic was previously explored in the depositions of Affirmative personnel.  Again, finding that this topic is relevant and that the Skeans should be permitted to depose a company representative on this topic, the Court **DENIES** the Motion for Protective Order as to Topic 23.

**CONCLUSION**

Based on the foregoing, the Court hereby **GRANTS in part, DENIES in part, and DENIES in part as moot** Defendant's Motion for Protective Order Relating to Rule 30(b)(6) Depositions [DE 24].  The Court **ORDERS** that the discovery deadline in this matter is extended to **June 15, 2009**, in order for the Skeans to complete the limited discovery permitted in this Order.

SO ORDERED this 30th day of April, 2009.


 s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:      All counsel of record