# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| BRIAN W. CATT, by and through MICHAEL SKEANS and CINDY SKEANS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CAUSE NO.: 2:08-CV-243-JVB-PRC |
| AFFIRMATIVE INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE PURSUANT TO
## 28 U.S.C. § 636(b)(1)(B)

This matter is before the Court on a (1) Motion of Defendant, Affirmative Insurance Company, for Summary Judgment [DE 13], filed by Defendant on December 16, 2008; (2) Motion for Oral Argument on Defendant's Motion for Summary Judgment [DE 29], filed by Plaintiffs on April 15, 2009; and a (3) Motion to Strike Defendant's Supplement to Defendant's Reply to Summary Judgment or, in the alternative, Plaintiffs' Response to the Defendant's Supplement [DE 36], filed by Plaintiffs on June 5, 2009.

On July 1, 2009, District Court Judge Joseph Van Bokkelen entered an order [DE 37] referring this case to the undersigned Magistrate Judge for a Report and Recommendation on the instant Motions. Based on the following analysis, the Court recommends to the District Court that the (1) Motion of Defendant, Affirmative Insurance Company, for Summary Judgment [DE 13] be granted; the (2) Motion for Oral Argument on Defendant's Motion for Summary Judgment [DE 29] be denied as moot; and the (3) Motion to Strike Defendant's Supplement to

Defendant's Reply to Summary Judgment or, in the alternative, Plaintiffs' Response to the Defendant's Supplement [DE 36] be denied as moot.

## PROCEDURAL BACKGROUND

On August 14, 2008, Plaintiffs filed a Complaint in the Lake Superior Court against Affirmative Insurance Company, Affirmative Insurance Services, Inc., and Roy Goldman, alleging that Defendant breached its insurance contract by failing to settle an underlying claim that Michael and Cindy Skeans ("the Skeans") brought against Brian Catt, who had an insurance policy with Affirmative Insurance Company and Affirmative Insurance Services, and alleging that the defendants are guilty of negligence, bad faith, and breached their duty of good faith and fair dealing. On August 26, 2008, the defendants filed a Notice of Removal under 28 U.S.C. §§ 1441 and 1446 based on this Court's original and diversity jurisdiction over the Plaintiffs' claims. On September 19, 2008, Defendant Affirmative Insurance Company filed an Answer and original defendants Roy Goldman and Affirmative Insurance Services, Inc. filed a Motion to Dismiss.

The parties filed a Stipulation of Dismissal as to original defendants Affirmative Insurance Services, Inc. and Roy Goldman, on October 7, 2008, and they were dismissed as parties on October 23, 2008.

Defendant filed a Motion for Summary Judgment and brief in support on December 16, 2008. Plaintiffs filed their response brief in opposition to the Motion for Summary Judgment on April 15, 2009, along with a Motion for Oral Argument on the Motion for Summary Judgment, seeking oral argument on the issue of bad faith. Defendant filed a reply brief in support of its Motion for Summary Judgment on May 15, 2009.

On May 28, 2009, Defendant filed a Supplement to its reply brief. Plaintiffs filed a Motion to Strike the Supplement on June 5, 2009.

On July 1, 2009, the District Court referred this case to the undersigned Magistrate Judge for a Report and Recommendation on the Motion for Summary Judgment, Motion for Oral Argument, and Motion to Strike.

## FACTUAL BACKGROUND

On January 8, 2003, Catt, who was driving his car while intoxicated, collided head on with a motorcycle being driven by Michael Skeans. As a result of the accident, Michael Skeans suffered serious physical injuries and damage to his motorcycle. Catt left the scene and was later caught and arrested. His blood alcohol level was .197%. Catt was ultimately charged with, and pleaded guilty to, a Class C felony charge for operating a motor vehicle while intoxicated.

At the time of the accident, Catt held an auto insurance policy with Defendant which had a bodily injury limit of $25,000.00 and a property damage limit of $10,000.00.

On January 11, 2003, Cindy Skeans, Michael Skeans' wife, contacted Defendant and informed it of the January 8, 2003 accident. Defendant opened a claim file on the matter on January 13, 2003. Defendant sent Catt and Michael Skeans a request for information about the accident and provided Mr. Skeans with medical and wage loss authorization forms. Mr. Skeans' Attorney advised him not to sign the authorizations as they might be violative of Indiana law. Defendant's claim supervisor, Roy Goldman, instructed the file handler to investigate the matter and advise him if there was a serious injury, as Cindy Skeans notified him that Michael Skeans would need shoulder surgery.

On January 14, 2003, Defendant's claims representative, Deborah Velez, attempted to call Catt, but was told by the person who answered the phone that he no longer resided at that number. Ms. Velez later spoke with Cindy Skeans, who told Ms. Velez that she was taking Michael Skeans to the hospital so that he could undergo surgery. Mrs. Skeans also informed Ms. Velez of Catt's blood alcohol content and that he was arrested for a felony, prompting Ms. Velez to notify her immediate manager of the nature of the injuries. Ms. Velez later received a copy of the police report of the accident, which showed that a third vehicle, belonging to Tanaz Bamboat, was also damaged in the accident.

On January 16, 2003, Ms. Velez contacted Bamboat and obtained a statement confirming the details of the accident, as set forth in the police report, and confirmed that Catt was issued a citation. On January 22, 2003, Defendant began to review the property damages involved in the accident and informed Cindy Skeans that an appraiser had determined that the motorcycle was a total loss.

On January 27, 2003, Cindy Skeans left a message for Ms. Velez, notifying her that Mr. Skeans had already incurred $17,000.00 in medical bills. Ms. Velez requested copies of the medical bills as she needed to review the bills to determine possible settlement authority. By February 11, 2003, Ms. Velez had not received copies of the requested bills and unsuccessfully attempted to contact Cindy Skeans.

In a letter dated February 14, 2003, received by Defendant on February 18, 2003, Attorney Timothy Kelly advised Defendant that he was representing the Skeans and offered a proposed settlement. The settlement offer provided that:

> In order for Affirmative to take advantage of this settlement, the following must occur twenty-one days from the date of this letter:

> 1. Payment by Affirmative in the sum of $35,000.00 ($25,000.00 for Michael Skeans' personal injury and $10,000.00 for his property damage);
> 2. Provide a certified copy of the policy of insurance which includes the declaration page for your insured Brian W. Catt; and,
> 3. Provide a sworn statement under oath from your insured, Brian W. Catt, providing the name of the location or locations where he was drinking prior to the accident and information on the reason for his presence at those locations. This sworn statement shall include your insured's **unmitigated** promise to fully cooperate with my client regarding prosecution of other potential civil defendants.

Pls.' Resp. Br., Ex. J. at 2 (emphasis in original).

On February 26, 2003, Defendant faxed a letter to Attorney Kelly advising him that it was unable to meet Plaintiffs' demand for payment of the policy limits because it had not received the complete medical records to support Michael Skeans' claim of injury and treatment and Defendant requested that Attorney Kelly provide the documents to it for review. On February 28, 2003, Defendant received a letter from Attorney Kelly refusing to supply the requested documents and reiterating the terms, and deadline, set out in the February 14, 2003 letter. Nonetheless, Attorney Kelly did provide that, at Defendant's request, he would provide a medical authorization signed by Michael Skeans. On that same day, Mr. Goldman faxed a response to Attorney Kelly, providing that Defendant felt that Attorney Kelly was being unreasonable in asking Defendant to resolve a loss without any supporting evidence of the nature and extent of Michael Skeans' injuries. Further, Mr. Goldman requested a fifteen day extension of time from the date that Defendant received the requested medical records.

Mr. Goldman and Attorney Kelly had a telephone conversation on March 3, 2003, in which Kelly provided that he would fax to Defendant the relevant documents that he had for Defendant's review, and Mr. Goldman again requested a fifteen day extension. In response, Attorney Kelly sent a fax to Mr. Goldman in which he provided that he would not grant the requested extension as he

felt that "[e]ven an inexperienced claim adjuster knows that this case is one that should be settled immediately." Def.'s Br., Tab 2 at 105. Further, Attorney Kelly accused Defendant of being unreasonable and provided that "[t]he suggestion that you need documentation is ridiculous. This is a case which screams out for immediate settlement." *Id.* at 106. Additionally, Attorney Kelly provided that "[w]hen you claim you are acting in good faith, nothing could be further from the truth. Your insistence on placing form over substance is nothing more than your effort to delay the inevitable." *Id.*

On March 4, 2003, Attorney Kelly faxed to Mr. Goldman a correspondence stating that Michael Skeans' medical bills totaled $18,020.43, along with copies of the medical bills.[1] According to Attorney Kelly, Defendant now had enough information to resolve the claim and he declined to extend the settlement deadline.

On March 5, 2003, Quintin Simutis, one of Defendant's employees, forwarded a copy of Attorney Kelly's demand letter to Catt. On March 6, 2003, Mr. Goldman received authority to pay the policy limits for the bodily injury claim. Later that day, Mr. Simutis left a voice message for Mr. Kelly in which he provided that Defendant would tender the $25,000.00 bodily injury policy limits. Mr. Simutis later faxed to Attorney Kelly a form release for any and all claims that the Skeans would possess as a result of the accident.

On March 7, 2003, Attorney Kelly sent a letter to Defendant rejecting Defendant's proposed settlement because it did not respond to the demand for payment of the property damage limits, provide a certified copy of the insurance policy and declaration page, or provide a sworn statement from Catt providing information regarding where he was drinking prior to the accident.

---

[1] Defendant represents that it did not receive any actual medical records.

In response, Mr. Goldman faxed to Attorney Kelly a letter providing that Defendant would forward a copy of the policy of insurance and declaratory page, Defendant would pay $6,500.00[2] for property damage as the appraised value of Michael Skeans' motorcycle[3], and advising Attorney Kelly that Defendant could not make Catt provide the requested statement and that he could not do so because of the pending criminal charges against him, and because he was still incarcerated.

According to Plaintiffs, prior to March 7, 2003, Defendant did not inform Catt of any settlement negotiations, the potential for personal exposure to an excess verdict, the options available to him regarding giving a statement as means of settling the claim, or that he might want to get independent counsel. On March 10, 2003, Defendant sent two letters to Catt advising him that a suit may be filed against him and that if he received any suit papers, he should immediately forward them to Defendant. Further, the letters notified him that he could be personally liable for the excess amount of a verdict in excess of his policy limits and that he was entitled to obtain his own attorney, at his own expense, to represent him for the portion of damages exceeding the policy limits.

Attorney Kelly faxed a letter to Mr. Goldman on March 12, 2003, withdrawing the settlement proposal and indicating that Plaintiffs would proceed with litigation. On March 15, 2003, Defendant retained Attorney Michael Raiz, from the law firm of Newman & Pelafas,[4] to represent Catt.

On March 26, 2003, Defendant's Claims Litigation Manager, Timothy Meade, faxed a letter to Attorney Kelly, advising him that Defendant had retained counsel and offered the full policy

---

[2] This amount was later adjusted to $9,050.57.

[3] Plaintiffs represent that while Defendant offered to pay for property damage to Michael Skeans' motorcycle, it failed to address payment for other items, such as Michael Skeans' dentures, gear, and clothing.

[4] The firm is now known as Newman & Raiz.

limits for both the property damage and bodily injury claims, and expressed Defendant's continued willingness to settle the matter. The letter further provided that, because Catt pled guilty to the criminal charge, he could now provide the sworn testimony requested by Attorney Kelly. Further, on April 3, 2003, Attorney Raiz contacted Attorney Kelly to advise him that Catt was willing to provide the requested sworn statement. Attorney Kelly failed to respond to Mr. Meade's letter.

In response to a June 25, 2003 letter from Attorney Raiz, on July 22, 2003, Attorney Kelly reaffirmed that he would not settle for $25,000.00.

On August 4, 2003, Plaintiffs brought suit against Catt in Lake Superior Court. On December 19, 2003, Defendant advised Attorney Kelly that it again offered its policy limits to the Skeans and that Catt continued to be willing to provide a sworn statement in exchange for a full and final release of the Skeans' claims against him. No settlement was reached and the case proceeded to trial, first resulting in a mistrial. On March 8, 2006, the Skeans obtained a judgment against Catt in the amount of $2,601,268.92, which included compensatory and punitive damages. On that same day, Defendant issued payment of the full policy limits to the Skeans and Attorney Kelly.

Catt subsequently appealed the judgment but it was affirmed by the Indiana Court of Appeals and transfer was later denied by the Indiana Supreme Court on July 17, 2007. On October 2, 2007, Catt executed an Assignment of Rights in which he assigned his negligence, breach of contract, and bad faith causes of action against Defendant to the Skeans in exchange for their promise to relinquish all rights of claims of execution of the Judgment that they obtained against Catt. On August 14, 2008, the Skeans, as Catt's assignees, filed the instant suit against Defendant.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199,

201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the

truth of the matter, but instead to determine whether there is a genuine issue of triable fact.  *See* *Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

# ANALYSIS

## A.  Motion for Summary Judgment

In its Motion for Summary Judgment, Defendant argues that Plaintiffs are unable to provide evidence supporting that Defendant acted in bad faith by failing to settle the Skeans' claims and, in any event, Plaintiffs' claims were untimely filed and barred by the statute of limitations.  In response, Plaintiffs argue that Defendant relies on the wrong standard for bad faith claims and, under the correct standard, a genuine issue of material fact exists to preclude summary judgment.  Further, Plaintiffs argue that their bad faith claim is not barred by the statute of limitations.  The Court addresses each in turn, starting with the statute of limitations.

### 1. Statute of Limitations

Defendant argues that the two-year statute of limitations under Indiana Code § 34-11-2-4[5] applies to Plaintiffs' bad faith claim and that it accrued on March 8, 2006, when the Skeans secured a judgment against Catt.  Accordingly, Defendant argues that the statute of limitations expired on March 8, 2008, and Plaintiffs untimely filed their bad faith claim.  By contrast, Plaintiffs argue in their response brief that the statute of limitations did not accrue until the Indiana Supreme Court denied transfer on July 17, 2007, and, thus, Catt's injury became final.  Further, Plaintiffs argue that the ten year statute of limitations for breach of contract claims applies to the instant matter, a

---

[5] Indiana Code § 34-11-2-4 provides: "[a]n action for . . . injury to personal property . . . must be commenced within two (2) years after the cause of action accrues."  Ind. Code § 34-11-2-4(2).

genuine issue of material fact exists as to which statute of limitations applies, and grounds exist to toll the statute of limitations.

Under Indiana law, in determining which statute of limitations applies to a cause of action, "it is the nature or substance of an action, rather than its form, that will determine the applicability of the statute of limitations." *Klineman, Rose and Wolf, P.C. v. North American Laboratory Co.*, 656 N.E.2d 1206, 1207 (Ind. Ct. App.1995). In the instant matter, while Plaintiffs' Complaint alleges that Defendant breached its insurance contract with Catt and was negligent, the substance of the action is not a breach of a provision of the insurance contract, but instead is a claim for breach of the duty of good faith and fair dealing and the theory of recovery is the bad faith failure to settle the underlying claim within Catt's policy limits. While Count I of Plaintiffs' Complaint alleges that Defendant breached its insurance contract with Catt, it also alleges that Defendant failed to settle the claim within policy limits, engaged in negligence, recklessness, willful and wanton misconduct, and bad faith, all resulting in the Skeans obtaining a judgment against Catt in excess of his policy limits. Count III[6] further alleges that Defendant breached its duty to deal with Catt in good faith and caused him to incur the underlying judgment against him. Accordingly, the root of Plaintiffs' claims is the Defendant's alleged bad faith failure to settle the underlying claim, which exposed Catt to a judgment against him.

"Indiana law has long recognized a legal duty, implied in all insurance contracts, for the insurer to deal in good faith with its insured." *Masonic Temple Ass'n of Crawfordsville v. Indiana Farmers Mut. Ins. Co.*, 779 N.E.2d 21, 26 (Ind. Ct. App. 2002). Indiana first recognized a tort claim against an insurer for breaching its duty to deal in good faith with an insured in *Erie Ins. Co.*

---

[6] Count II also alleges claims for breach of the duty of good faith and fair dealing and acts of bad faith against Mr. Goldman, who has since been dismissed as a defendant.

*v. Hickman*, 622 N.E.2d 515 (Ind. 1993). *See Westfield Ins. Co. v. Sheehan Const. Co., Inc.*, 580 F. Supp. 2d 701, 717 (S.D. Ind. 2008). The Indiana Supreme Court in *Erie* recognized two distinct legal theories under which a breach of this duty can be brought: "one in contract and one in tort, each with separate, although often overlapping, elements, defenses, and recoveries." *Erie*, 622 N.E.2d at 520. In particular, the Indiana Supreme Court held that:

> The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

*Id.* at 519. The duty to act in good faith is distinct from the duty not to breach the insurance contract. *Westfield*, 580 F. Supp. 2d at 717. The insurer's duty also includes the duty to act in good faith when attempting to settle claims against an insured. *See Economy Fire & Casualty Co. v. Collins*, 643 N.E.2d 382 (Ind. Ct. App. 1994). Although *Erie* involved a claim by an insured against the insurer, where a third party obtains an assignment, it may have a cause of action against the insurer for bad faith failure to settle a claim. *See id*; *Humphrey v. Founders Ins. Co.*, No. 2:05-cv-36, 2006 WL 978881 (N.D. Ind. April 7, 2006). Further, the entry of a judgment against an insured constitutes damage to the insured's property. *Allstate Ins. Co. v. Axsom*, 696 N.E.2d 482, 485 (Ind. Ct. App. 1998).

Given that Plaintiffs' Complaint focuses on allegations of damages suffered by Catt because of the judgment entered against him (which constitutes damage to his property) as a result of Defendant's alleged breach of its implied duty to act in good faith by failing to settle the underlying claim, rather than the breach of a specific contractual obligation, the Court concludes that Plaintiffs'

have alleged a cause of action that lies in tort rather than contract.[7]  Under Indiana law, a claim that the duty of good faith and fair dealing has been breached is considered to be the same as a claim of breach of fiduciary duty and is governed by the same two-year statute of limitation.  *Del Vecchio v. Conseco, Inc.*, 788 N.E.2d 446, 451 (Ind. Ct. App. 2003).  Accordingly, the Court concludes that a two year statute of limitations period applies to Plaintiffs' claim.

Defendant argues that Plaintiffs' Complaint is untimely because it was filed more than two years after the trial court entered a judgment against Catt, which Defendant argues is the time at which Plaintiffs' claim accrued.  By contrast, Plaintiffs argue that their claim accrued on July 17, 2007, when the Indiana Supreme Court denied transfer, as Catt's injury became final at this point.  Plaintiffs argue that requiring the statute of limitations to begin running prior to this date would require Catt to have brought the suit against Defendant while the judgment was being appealed, even though Catt may not have suffered any damages as the case may have been reversed.  As a preliminary matter, the Court notes that the Plaintiffs rely on an incorrect standard for determining when a cause of action accrues.  Plaintiffs argue that the standard to apply is when the plaintiff either "knows of the malpractice and resulting injury, or discovers facts . . . ."  *Van Dusen v. Stotts*, 712 N.E.2d 491, 493 (Ind. 1999); *See* Pls.' Resp. Br. 22.  The standard that the Plaintiffs rely on is the standard applied to the statute of limitations in medical malpractice cases.  *See id.* (applying the specific medical malpractice statute of limitations under Indiana Code § 34-18-7-1(b)); *Herron v.*

---

[7] The Court's position is further supported by portions of Plaintiffs' response brief in which they argue why the statute of limitations did not accrue until the judgment in the underlying suit was final.  In particular, Plaintiffs provided that "if Affirmative had obtained a reversal, Catt may not have a cause of action against Affirmative because while there may have been a breach of contract and/or tort of bad faith, there would have been no damages.  Without damages, there is no cause of action *in tort*." Pls.' Resp. Br. 23 (emphasis added).  Plaintiffs further provide that "[a]s any first year law student knows *a tort claim* must have: duty, breach of that duty and damages resulting as a proximate cause of that breach."  *Id.* (emphasis added).

14

*Anigbo*, 897 N.E.2d 444, 448 (Ind. 2008) (describing that this statute of limitations "differs dramatically from the usual statute of limitations" as it is an occurrence based limitations period). Accordingly, the standard that Plaintiffs cite is inapplicable to the instant case.

Under Indiana's discovery rule, "a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat. Bank,* 586 N.E.2d 840, 843 (Ind.1992). The determination of when a cause of action accrues is generally a question of law. *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009). "For an action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred." *Id.* A cause of action brought by an assignee of another's claims accrues at the same time as the assignee's claims accrued. *Strauser v. Westfield Ins. Co.*, 827 N.E.2d 1181, 1185 (Ind. Ct. App. 2005).

In this matter, the parties exchanged numerous communications in attempts to settle the underlying suit within the policy limits, but ultimately failed to do so. As a result, the Skeans proceeded with their suit against Catt and obtained a judgment against him on March 8, 2006. The judgment obtained against Catt constitutes an injury to his personal property. *Axsom*, 696 N.E.2d at 485. "[T]he entry of judgment against an insured constitutes actual damage to the insured because it impairs his credit, places a cloud on the title of his estate, and impairs his ability to apply for loans." *Id.* Accordingly, on March 8, 2006, Catt should have known, or could have discovered by exercising ordinary diligence, that he sustained an injury (the judgment entered against him) as a result of Defendant's alleged tortious conduct (bad faith failure to settle). As Catt's assignees, the Skeans' claims accrued on this date. *See Strauser*, 827 N.E.2d at 1185. Although Plaintiffs argue

that the extent of the injury was not final until the Indiana Supreme Court denied transfer on July 17, 2007, as previously noted, it is not necessary that the full extent of a plaintiff's injury be known, but only that "*some ascertainable damage has occurred.*" *Cooper*, 899 N.E.2d at 1280 (emphasis added). Plaintiffs have failed to cite any legal authority, and the Court is unable to find any, supporting that the appeal of the underlying judgment tolled the statute of limitations in this matter. Accordingly, Plaintiffs' Complaint filed on August 14, 2008, appears to be untimely. Nonetheless, Plaintiffs present several additional arguments in support of tolling the statute of limitations in this matter. The Court addresses each in turn.

First, relying on the Court of Appeals of Indiana's decision in *Kocher v. Getz*, 844 N.E.2d 1026 (Ind. Ct. App. 2006), Plaintiffs argue that because Defendant paid for Catt's legal fees on appeal, it is precluded from arguing that the statute of limitations bars Plaintiffs' claim. In *Kocher*, the court acknowledged that the insurer was the actual party "bringing, managing, and funding this appeal." *Id.* at 1031. Further, as the appellate court discussed, the trial court noted that although the insurer was not a named party, it was "the ghost in the courtroom" and was "in fact a party to the case." *Id.* Also, the parties admitted that the insurer was the catalyst behind the appeal. *Id.* Accordingly, because of its level of involvement in the appeal, essentially joining the insured in the appeal, the appellate court determined that the insurer acknowledged that the statute of limitations on the assignee's bad faith claim had been tolled and could not argue otherwise. *Id.* at 1033.

By contrast, there is no evidence in this case to support that Defendants' involvement in the instant matter rises to the level of the insurer in *Kocher*. Aside from continuing to pay Catt's defense costs on appeal, Plaintiffs' have failed to provide evidence indicating that Defendant brought or managed the appeal, or that it was the catalyst behind, and the real party in interest to,

the appeal. Further, unlike the situation in *Kocher*, the appellate court decision in the underlying appeal in this case makes no mention of Defendant's involvement in appealing the judgment against Catt. *See Catt v. Skeans*, 867 N.E.2d 582 (Ind. Ct. App. 2007) (providing no indication that Defendant was involved in the appeal). In fact, the appellate court's decision makes no mention of Defendant. *See id.* Accordingly, this Court finds that, contrary to Plaintiffs' arguments, the *Kocher* court's decision to preclude the insurer from arguing that the statute of limitations was violated, because of its participation in the appeal, is limited to the facts of that case and is distinguishable from the facts present in this case. Further, Plaintiffs have failed to provide any legal authority to support that Defendants' payment of Catts' legal fees makes it a party to his appeal of the underlying judgment and precludes Defendant from raising a statute of limitations defense. Accordingly, Plaintiffs have failed to raise a genuine issue of material fact regarding Defendant's involvement in the underlying appeal.

Next, Plaintiffs argue that the statute of limitations should be tolled under the doctrine of continuing wrong. This doctrine applies when an entire course of conduct combines to produce an injury. *Parish v. City of Elkhart*, No. 3:07-cv-452, 2008 WL 4187953, at *4 (N.D. Ind. Sept. 5, 2008). When this doctrine applies, the statute of limitations begins to run at the end of the continuing wrongful act. *Id.* For this doctrine to apply, a plaintiff must establish that the alleged injury-producing conduct was of a continuing nature and the injury is produced by a combination of acts. *Id.* This doctrine is not equitable, but instead defines when an act, omission, or neglect took place. *Id.* Plaintiffs argue that a material fact exists regarding whether Defendant continued its wrongful conduct. Despite the fact that Plaintiffs' Complaint alleges that Defendant's wrongful conduct is its alleged bad faith failure to settle, Plaintiffs now contend that Defendant's wrongful

conduct was its continued representation of Catt and this did not cease until the Indiana Supreme Court denied transfer.  Further, relying on Catt's April 8, 2009 deposition testimony, Plaintiffs argue that the attorney who represented Catt, Attorney Raiz, in the underlying suit, "indirectly" and "off the record" advised Catt not to sign the assignment by telling him that he may lose his representation from Defendant if he did so.  Accordingly, Plaintiffs contend that Defendant's bad faith was ongoing throughout the appeal.  However, Plaintiffs have failed to explain exactly how Defendant's continued representation of Catt through the appellate process constituted wrongful conduct.  Even if Attorney Raiz provided the alleged "off the record" advice, there is no evidence in the record indicating that he did so on a continuing basis or that he did so on more than one separate occasion.  For the doctrine of continuing wrong to apply, Plaintiffs must establish that the alleged injury-producing conduct was of a continuous nature.  *See Parish*, 2008 WL 4187953, at *4.  Plaintiffs have failed to carry this burden here and no genuine issue of material fact exists as to whether Defendant continued any alleged wrongful conduct.[8]

Further, Plaintiffs argue that Mr. Raiz had a conflict of interest in representing Defendant and Catt.  Other than making this very broad allegation in a single sentence, Plaintiffs have not explained what alleged conflict existed.  Rather, Plaintiffs appear to argue that the fact that Mr. Raiz was hired by Defendant to represent Catt (as its insured), itself, created a conflict of interest.  The Indiana Supreme Court has held that attorneys employed by insurance companies may represent insureds under the circumstances and to the extent permissible by their ethical obligations defined

---

[8] Further, Plaintiffs have failed to show how this conduct was wrongful or deceptive.  At Catt's April 8, 2009 deposition, he provided that the alleged advice not to sign the assignment was made "indirectly."  Based on the record, the Court cannot conclude that Attorney Raiz, in advising Catt that he may lose his representation, sought to deceive Catt, as Plaintiffs allege.  Rather, if Catt signed the assignment, then he would have assigned all rights he had to pursue a claim against Defendant, and Attorney Raiz would likely be unable to represent a party in any suit against the Defendant.

in the Admission and Discipline Rules and the Rules of Professional Conduct. *Cincinnati Ins. Co. v. Wills*, 717 N.E.2d 151, 165 (Ind. 1999). Although Attorney Raiz was outside counsel, rather than an in-house attorney for the Defendant, the *Wills* court discussed that the same concerns regarding the representation of an insurance company and the insured, and the legal and ethical obligations involved, applied whether an attorney is in-house counsel or outside retained counsel. *Id.* at 162-63. Accordingly, the Court finds that no genuine issue of material fact exists as to whether Attorney Raiz's representation of Catt created a conflict of interest.

Lastly, Plaintiffs argue that Mr. Raiz's alleged "off the record" advice deceived Catt, delayed the assignment process, and such delay constituted fraudulent concealment. "Fraudulent concealment is an equitable doctrine which operates to prevent a defendant from asserting the statute of limitations as a bar to a claim where the defendant, by deception or violation of a duty, prevents the plaintiff from obtaining the knowledge necessary to pursue a claim." *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 690 (Ind. Ct. App. 2006). Generally, concealment must be active and intentional. *Olcott Intern. & Co., Inc. v. Micro Data Base Sys.*, 793 N.E.2d 1063, 1072 (Ind. Ct. App. 2003). "The affirmative acts of concealment must be calculated to mislead and hinder a plaintiff from obtaining information by the use of ordinary diligence, or to prevent inquiry or elude investigation." *Id*. When this occurs, equity will toll the statute of limitations until equitable grounds cease to operate as a reason for the delay. *Perryman*, 846 N.E.2d at 690. Fraudulent concealment does not establish a new date for the statute of limitations to commence, but instead creates an equitable exception. *Id*. Under this equitable exception, instead of a full statute of limitations period, a plaintiff must exercise due diligence in commencing his action after the equitable ground ceases to operate as a valid basis for causing delay. *Id.* at 690-91. Accordingly,

the plaintiff must bring a cause of action within a reasonable time after discovering information which could lead to discovery of the cause of action.  *Id.* at 691.  Here,[9] Plaintiffs have failed to explain how the alleged "off the record" advice, even assuming that it delayed the assignment process, prevented Catt from obtaining the knowledge necessary to pursue a claim.  As already discussed in this Order, for Catt to know that a cause of action exists, he would only need to know that he sustained an injury as a result of alleged tortious conduct.  Here, the injury was the judgment entered against Catt and the alleged tortious conduct is Defendant's bad faith failure to settle.  No other knowledge was necessary for Catt to pursue a claim.  Plaintiffs do not allege that Attorney Raiz or Defendant tried to conceal the fact that the parties failed to settle and both the Skeans and Catt knew that a judgment was entered against Catt that exceeded his policy limits.  Further, to the extent that Plaintiffs allege that this conduct delayed the assignment process, at Catt's April 8, 2009 deposition, he testified that he was delaying executing the assignment because of the "off the record advice."  Yet, Plaintiffs fail to provide any evidence, and fail to address, how this alleged advice resulted in Catt being unable to obtain knowledge necessary to pursue a bad faith claim or was intended to delay the assignment from being executed.  Further, even if the "off the record" advice was given, the fact that Attorney Raiz may have advised Catt that he may lose representation from Affirmative by executing the assignment does not appear to be calculated to mislead Catt or hinder him from obtaining information necessary to pursue a claim against the Defendant or assigning

---

[9] Under Indiana law, in addition to active acts, fraudulent concealment may also be passive.  *Prime Eagle Grp. Ltd. v. Steel Dynamics, Inc.*, No. 1:08 CV 35, 2009 WL 449173, at *12 (N.D. Ind. Feb. 23, 2009).  Passive fraudulent concealment occurs when a party in a confidential relationship, who has a duty to disclose information, fails to do so.  *Id.*  While Plaintiffs do not specifically clarify which type of fraudulent concealment they allege, the Court concludes that because Plaintiffs argue that the "off the record" advice (active conduct) caused the alleged delay/fraudulent concealment, Plaintiffs allege active fraudulent concealment.  Accordingly, the Court only addresses this form of fraudulent concealment.

claims to the Skeans.  Further, Plaintiffs have not alleged that Defendant was involved in the alleged concealment.  In sum, this alleged conduct is not the type of hugger-muggery contemplated by the doctrine of fraudulent concealment.  Accordingly, based on the foregoing, the Court concludes that no genuine issue of material fact exists as to whether Plaintiffs' claim for bad faith failure to settle is time barred under the statute of limitations.  Therefore, because Plaintiffs' claim was filed more than two years after the statute of limitations accrued, the Court recommends that the Motion for Summary Judgment be granted.

2. *Standard for Third Party Bad Faith Failure to Settle Claims*

Because the Court has determined that Plaintiffs' bad faith failure to settle claim is untimely, it need not address the issue of what standard applies to the instant bad faith claim.

## B.  Motion for Oral Argument

Plaintiffs filed a Motion for Oral Argument on Defendant's Motion for Summary Judgment requesting that the Court permit the parties to conduct oral argument on the appropriate bad faith standard to apply to the instant case and on genuine issues of material fact.  Because the Court recommends that the Motion for Summary Judgment be granted on statute of limitations grounds, there is no need for the requested oral argument on the issue of bad faith.  Accordingly, the Court recommends that the District Court deny as moot the Motion for Oral Argument on Defendant's Motion for Summary Judgment.

## C. Motion to Strike

Plaintiffs filed a Motion to Strike Defendant's Supplement to Defendant's Reply to Summary Judgment or, in the Alternative, Plaintiffs' Response to Defendant's Supplement.  On May 28, 2009, Defendant, without leave of Court, filed a Supplement to its reply brief.  In the Supplement,

Defendant discloses additional legal authorities relevant to the issue of whether an affidavit cited in Plaintiffs' response brief to the Motion for Summary Judgment contained inadmissible legal conclusions related to Defendant's alleged bad faith failure to settle. Because the Court recommends that the Motion for Summary Judgment be granted on statute of limitations grounds, the Court recommends that the District Court deny as moot the Motion to Strike Defendant's Supplement to Defendant's Reply to Summary Judgment or, in the Alternative, Plaintiffs' Response to Defendant's Supplement.

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the District Court:

(1) **GRANT** the Motion of Defendant, Affirmative Insurance Company, for Summary Judgment [DE 13];

(2) **DENY as moot** the Motion for Oral Argument on Defendant's Motion for Summary Judgment [DE 29]; and

(3) **DENY as moot** the Motion to Strike Defendant's Supplement to Defendant's Reply to Summary Judgment or, in the alternative, Plaintiffs' Response to the Defendant's Supplement [DE 36].

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(B). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have ten (10) days after being served with a copy of this Report and Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902,

904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 21st day of July, 2009.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record